JOSEPH S. RADOVSKY *vs.* CELIA WEXLER & others.

Bristol.    October 27, 1930. — November 25, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, SANDERSON, & FIELD, JJ.

*Release. Evidence,* Extrinsic affecting writing.

An unambiguous general release of all demands embraces everything included within its terms, even though some of the matters may not have been in the minds of the parties or particularly contemplated at the time. Per SANDERSON, J.

An existing obligation or contract right, although executory and in some respects dependent upon contingencies that may never happen, is one that can be released by a general release of all demands.

Upon the termination of an employment by a corporation, the employer's principal stockholder and the employee negotiated an accounting, as a result of which the stockholder, for himself and the corporation, and the employee, each executed a general release under seal in favor of the other, and the stockholder executed a negotiable promissory note to the employee's mother in a sum found to be due to him from the corporation. The note was delivered as the property of the employee. The employee's mother indorsed the note to her daughter, who knew that it was the employee's property. Previous to the delivery of the releases, both the stockholder and the employee had indorsed a note of another corporation under a mutual agreement to be liable equally thereon. The note was outstanding and unpaid at the time of the delivery of the releases. Subsequent thereto the stockholder paid a sum on account of the second corporation's note, one half of which sum should have been paid by the employee. The employee's daughter as indorsee commenced an action against the stockholder on his note to the employee's mother. In a suit in equity by the stockholder against the daughter and the employee to enjoin the prosecution of such action and to establish the amount due on the note and to deduct therefrom the payment made by the stockholder for the benefit of the employee, a master found that the liability of the employee as an indorser on the second corporation's note was not included or intended to be included in the scope of the releases exchanged, and a final decree was entered granting the relief sought. Upon appeal by the defendants from the final decree only, it was *held,* that

(1) The releases being absolute and unequivocal, they could not be explained, nor exceptions read into them, by parol evidence;

(2) The obligation of the employee to the plaintiff under their mutual agreement as indorsers of the second corporation's note necessarily was included within the scope of the release given by the plaintiff to the employee and was discharged thereby;

(3) The plaintiff thereafter could not create against the employee a new right based upon such obligation by making the payment on said note;

(4) The master's finding was erroneous;

(5) No reason appeared for enjoining the prosecution of the action at law based on the note made by the plaintiff; and the decree must be reversed and a decree entered dismissing the bill.

BILL IN EQUITY, filed in the Superior Court on March 6, 1929, and described in the opinion.

The suit was referred to a master. Material findings by him are stated in the opinion. By order of *Dillon,* J., there were entered an interlocutory decree confirming the master's report and a final decree granting the relief sought by the plaintiff. The defendants appealed from the final decree only.

The case was submitted on briefs.

*F. A. Pease,* for the defendants.

*D. R. Radovsky,* for the plaintiff.

SANDERSON, J.   This is a bill in equity in which the plaintiff asks (a) that the defendants Celia and Bertha Wexler be restrained from prosecuting their action for the collection of a note executed by the plaintiff, payable to the order of Etta Leah Wexler and by her indorsed to the order of Celia and Bertha Wexler; (b) that the amount due on the note be established and there be deducted from that amount the payments made by the plaintiff, alleged to have been to the use of and for the benefit of Hyman Wexler; and (c) that the defendants be ordered to credit on the note any future payments made by the plaintiff. By the final decree, from which the defendants appealed, the plaintiff was granted the relief sought.

Hyman Wexler, who will hereinafter be referred to as the defendant, had been employed for many years by the National Wholesale Grocery Company and its successor, Puritan Grocery Stores, Inc., corporations in which the plaintiff owned substantially the entire capital stock. His employment ceased in February, 1926, and negotiations for an accounting resulted in an agreement that $8,000 was due and on July 1, 1926, the plaintiff executed two prom-

issory notes, one for $6,000 payable in instalments to the order of the defendant's mother, and one for $2,000 payable to the defendant's sister. The note for $6,000 was indorsed by the payee to two sisters of the defendant. These sisters have commenced action against the plaintiff on this note and it is the prosecution of this action which the plaintiff in this suit is seeking to enjoin.

The master appointed in the case found that the note for $6,000 is the defendant's property and was made payable to his mother at his request so that it could not be reached in satisfaction of any judgment in favor of a named creditor, and that the present holders of the note knew that it was the property of their brother. At the time of the giving of the two notes, the plaintiff executed and delivered to the defendant general releases under seal of the defendant personally and of his mother from the plaintiff and from the two corporations, and the defendant delivered on behalf of himself and his mother like releases to the plaintiff and the two corporations. In these releases there was no specific mention of any particular obligation. At the time of this accounting the defendant also surrendered to the plaintiff three promissory notes, made by the National Wholesale Grocery Company, payable to the defendant personally, also certain certificates of stock, and later a guaranty was given by the plaintiff to the defendant indemnifying him against liability as indorser on another note given by the National Wholesale Grocery Company.

Prior to the accounting the plaintiff and the defendant and two other parties had indorsed promissory notes of a company called the Waycross Company in the total amount of $50,000, and by agreement between the indorsers, the two indorsers other than the plaintiff and defendant were each to be liable for one third of the faces of the notes and the plaintiff and defendant were to be liable for the other third. These notes were unpaid at the time of the accounting and the liability of the plaintiff and defendant thereon amounted to more than $17,400, upon which payments were made from time to time. The master found that the defendant's liability on the Waycross Company

notes was not released or intended to be released by the execution of the written releases and was not included in them. The plaintiff has paid the sum of $10,400 on account of the Waycross Company notes, of which the master found that $5,200 should have been paid by the defendant. He also found that in addition the defendant is under a future liability of $3,500 on the note.

If there was a mutual mistake as to some material part of the releases this might be ground for cancellation or reformation. *Barrell* v. *Britton,* 252 Mass. 504. *Crowley* v. *Holdsworth,* 264 Mass. 303, 308. The present suit was not brought to reform the terms of the releases. A written contract, clear in its terms and freely entered into, is binding on both parties according to its terms, unless it is reformed because of mutual mistake or unless upon that or some other ground it is found to be invalid. No copies of the general releases are set out in the master's report, but it is assumed that such releases are comprehensive in their terms and would purport to release the parties from all existing contract obligations, claims, demands or rights of action arising out of any transaction between them. *Willett* v. *Herrick,* 258 Mass. 585, 594–595. A general release of all demands embraces everything included within its terms, even though some of the matters may not have been in the minds of the parties or particularly contemplated at the time. *Hyde* v. *Baldwin,* 17 Pick. 303, 307. *Dunbar* v. *Dunbar,* 5 Gray, 103. An existing obligation or contract right between the parties, although executory and in some respects dependent upon contingencies that might never happen, is one that can be released. *Pierce* v. *Parker,* 4 Met. 80. *Reed* v. *Tarbell,* 4 Met. 93, 95. *Arlington National Bank* v. *Bennett,* 214 Mass. 352, 355. *Willett* v. *Herrick, supra.* In the case of *Pierce* v. *Parker, supra,* the contention was made that an indorser for the accommodation of the maker, who had given a release of debts, dues, claims and demands against the maker and had thereafter paid the note to the holder, could recover against the maker notwithstanding the release, and it was urged in support of this contention that the cause of action did not

exist at the time the release was given and that the mere liability to pay the debt of another is not such a demand as is embraced within a common release. But the court in holding that the cause of action was barred said at page 89 that " while a possibility merely is not the subject of a release, yet that in all cases where there is an existing obligation or contract between parties, although such obligation or contract is executory and dependent also upon contingencies that may never happen, still, if the party, in whose favor such obligation or contract is made, or who is liable, by force of it, to suffer damage if it is not performed by the other when the contingency happens, shall execute a release of all claims and demands, actions and causes of action, &c. correct in point of form, and having at the time of executing the release such obligation or contract in view, as one of the subjects upon which the release shall operate, then such release shall be held as a good and valid bar to any suit which may be afterwards brought upon such obligation or contract, or for money had, received or paid, upon the future happening of the contingency, in consequence of which the plaintiff sustains damage, and but for such release would have had a perfect right of action."

A release which is absolute and unequivocal in its terms cannot be explained by parol evidence. If any existing liability was intended to be excepted from a general release it should have been so expressed in it. *Deland* v. *Amesbury Woollen & Cotton Manuf. Co.* 7 Pick. 244, 246. The instruments must be construed " according to the language which the parties have seen fit to use." *Klopot* v. *Metropolitan Stock Exchange,* 188 Mass. 335, 337. *Reed* v. *Tarbell, supra.* In the case at bar the obligation or contract upon which the plaintiff must rely to maintain his action being necessarily included within the scope of the terms of a general release, the master could not legally find as a fact that the defendant's liability on the Waycross Company note was not released or intended to be released by the execution of the written releases. All liability of the defendant to the plaintiff by reason of their indorsements of the notes or agreement in relation thereto having been

discharged by his general release under seal, the plaintiff could not create a new right based upon this liability by making payments on the notes after the releases were delivered. *Hamblen* v. *Ratigan,* 119 Mass. 153, is distinguishable on its facts.

In reaching the conclusion that the plaintiff has no right of action against the defendant growing out of the payments made by the plaintiff on the notes of the Waycross Company, we have not undertaken to pass upon the rights of the holders of the notes against the indorsers or of the two indorsers other than the parties to this suit by virtue of their agreement with the plaintiff and the defendant or otherwise.

On this record no reason appears for enjoining the prosecution of the action at law based on the note made by the plaintiff. The decree must be reversed and a decree entered dismissing the bill with costs.

*Ordered accordingly.*